# Rafferty *v.* Donnelly.

*Practice—Supreme Court—Paper-books—History of the case.*

A " history of the case " which teems with extracts from the evidence, is argumentative in character, and covers twenty-one pages when two would be sufficient, is a flagrant violation of the rules of the Supreme Court relating to paper-books.

*Corporation—Officers—Stockholder.*

Where a stockholder of a corporation has parted with his stock, he cannot thereafter maintain a suit against the officers of the company for an alleged illegal appropriation of the moneys of the company as salaries, where it appears that he had knowledge of the alleged illegal appropriation before he sold his stock.

Argued Feb. 27, 1900. Appeal, No. 187, Oct. T., 1899, by plaintiff, from decree of C. P. No. 1, Allegheny Co., June T., 1897, No. 126, on bill in equity, in case of Gilbert T. Rafferty v. Charles Donnelly et al. Before GREEN, C. J., McCOLLUM, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Bill in equity for an account.

The case was referred to J. M. Swearingen, Esq., as referee, who reported in favor of the defendant.

Exceptions to the referee's report were dismissed, the court filing the following opinion, from which the facts appear:

The plaintiff's bill after stating the incorporation of the Mc-Clure Coke Company, the amount of its stock and the number of shares owned by the several stockholders, states that by the by-laws of the corporation it was provided that the officers should consist of a president, two vice presidents, a secretary and treasurer and a board of directors, consisting of three persons, who were to be elected annually, etc., and that by a resolution of the stockholders, approved by the board of directors, it had previous to the action of the board, which is the foundation of plaintiff's complaint, resolved, that the president of said corporation should receive a yearly salary of $5,000; that each of the vice presidents should receive a salary of $5,000 per annum, and the secretary a salary of $2,000 per annum. That for years prior to April 7, 1895, Gilbert T. Rafferty had been president of said corporation, Charles Donnelly and B. H. Ruby had been vice presidents, and for some time prior to said date James Adair had been secretary and treasurer, and the plaintiff, Gilbert T. Rafferty, Charles Donnelly and B. H. Ruby had been the directors of said corporation. And that during the time said officers held their said positions, the salaries provided for as above mentioned had been fully paid them.

That on May 2, 1895, a meeting of the board of directors of said corporation was held, at which Charles Donnelly and B. H. Ruby were present (the plaintiff being then absent from the state of Pennsylvania and having no knowledge of the purpose of said meeting) and that Donnelly and Ruby assuming to be a quorum of the board of directors, caused to be passed the following resolution: Resolved, that before the next annual meet-

ing of the company and closing of the books for the current fiscal year, an adjustment of certain salaries, some time in contemplation, shall be made in favor of the company's vice presidents, upon whom has devolved the responsible, continuous management of the business of the company, and that anterior to and during the four fiscal years ended May 1, 1895, and to effect and complete this adjustment additional salary credits shall be made as follows : to the account of Charles Donnelly $40,000, to the account of B. H. Ruby, $10,000, thus making their total compensation respectively $15,000 and $7,500 per annum during the years named to May 1, 1895, and that afterwards on May 29, 1895, a meeting of the stockholders was held at which all the defendants except B. H. Ruby were present, but at which plaintiff was not present, and at said meeting the action of the said directors, Donnelly and Ruby, was reported and approved by the unanimous vote of the stockholders present at said meeting, and at the same meeting the salary of James Adair, which had been previously fixed at $2,000 per annum, was raised to $250 per month, dating the same back to January 1, 1895.

That plaintiff was absent from this state during all the time covered by these transactions, and at no time prior to or during his absence did he have any information from defendants or any of them of their intention to pass said resolution and appropriate to themselves the several sums of money hereinbefore mentioned. And that afterwards, October 1, 1895, Wm. P. Snyder acting for Donnelly and the other defendants, by false and fraudulent representations procured a contract from plaintiff whereby he was to sell to said Snyder all his stock in said company at a price based upon the existing assets, debts and liabilities of said company, and thereupon plaintiff transferred his stock to the H. C. Frick Company, and the acts complained of did not come to his knowledge until about November 2, 1896, whereupon he demanded the defendant should make good to him his proportionate share of said money thus fraudulently abstracted by them from the treasury of said company.

The fact of the increase of salaries as alleged by plaintiff is not controverted, and it is not pretended that he was present or had information that it was to be made previous to the action of the board, and therefore so far as plaintiff was con-

cerned it was illegal and void, and he has a right by this proceeding in equity to have his proper proportion of the moneys thus received by Ruby, Donnelly and Adair restored to him, unless defendants can show some good and sufficient reason to the contrary. We can see no cause of action against the McClure Company, but the case is different as to Ruby, Donnelly and Adair. If plaintiff's contention is true, they without legal right got some $50,000 out of the treasury of the company, a portion of which belonged to the plaintiff.

Without going into any particular examination of the multitudinous exceptions filed to the report of the referee, in our opinion the whole question hangs upon the fact whether or not the plaintiff had knowledge of the action of the board and expressly or impliedly assented thereto before or at the time he disposed of his stock.

As was said in Brown v. De Young by the Superior Court of Illinois in a somewhat similar case, " the payment of such a salary was not an unlawful act and void because it was ultra vires the corporation, but was unjustifiable and voidable because not authorized as against any innocent stockholder who was thereby injured," and whether this appropriation of the company's money was done (as alleged by plaintiff) with an actual fraudulent intent or not, if done without his knowledge or consent, it was in its effect a legal fraud so far as his rights as a stockholder were concerned, such as will enable him to avoid the act to that extent.

It will be observed that plaintiff's bill alleges that defendants "fraudulently and illegally assumed the right to appropriate," etc., and " that in pursuance of the illegal and fraudulent action aforesaid defendants, Donnelly, Ruby and Adair, drew the sum of $40,000, etc., and that the defendants concealed their action from him and kept him in ignorance thereof till after he had disposed of his stock."

There is no question as to the fact that the board of directors of the company, and the stockholders subsequently, did without the plaintiff's knowledge or consent appropriate to Donnelly, Ruby and Adair, the large sums of money mentioned, as specified in plaintiff's bill, and that in pursuance thereof Donnelly drew from the treasury of the company the sum of $40,000, Ruby $10,000, and Adair the sum of $416.66.

These facts alone are such that the appropriation of moneys thus made was illegal, and such as was not binding on the plaintiff unless he subsequently had knowledge thereof, and by his actual or implied assent is now estopped from taking advantage of such actions, and requiring defendants to account to him for his share of the funds of the company thus appropriated to their several uses.

The defendant's answer does not deny the appropriation of the funds of the McClure Coke Company as alleged by plaintiff, but alleges that plaintiff knew of the action shortly after it took place, and denies any concealment or attempted concealment of it from plaintiff.

The referee has found that plaintiff has not proved his averment that defendants concealed from him and kept him in ignorance of the appropriation of $50,416.66 of the moneys of the McClure Coke Company, by Charles Donnelly, B. H. Ruby and James Adair, as salaries for past services, and that plaintiff had no knowledge of said action till after the transfer of the stock.

This finding is directly responsive to the issue raised by the bill and answer, and amounts to a finding in legal effect that defendants did not conceal from plaintiff the fact of the appropriation, and also that he had knowledge of it before he sold his stock.

This question is raised in every conceivable way by the forty-two suggestions of error, and has been most carefully and elaborately discussed by counsel, and has been carefully considered by the court, and we are now constrained to say, that the evidence has not led us to the conclusion that the finding of the referee is so clearly wrong as to justify us in setting aside or reversing his conclusions upon the controlling facts of the case.

The exceptions to the referee's report are therefore overruled and dismissed and the report is now confirmed.

*Errors assigned* were in overruling exceptions to referee's report.

*J. S. Ferguson,* with him *D. F. Patterson* and *J. M. Stoner,* for appellant, cited Brown v. De Young, 167 Ill. 549.

*D. T. Watson,* of *Watson & McCleave,* with him *Dalzell, Scott*

& *Gordon,* for appellees, cited Green's Brice's Ultra Vires (2d ed.), p. 662, Hawes v. Oakland, 104 U. S. 456, Hersey v. Veazie, 24 Maine, 9, Beach on Private Corporations, sec. 889, Fitzgerald v. Missouri Pacific Ry. Co., 45 Fed. Repr. 814, Button v. Hoffman, 61 Wis. 20, Bidwell v. P. O. & E. L. Pass. R. R. Co., 114 Pa. 541, Humphreys v. McKissock, 140 U. S. 304, Davenport v. Dowe, 18 Wall. 626, Wallace v. Lincoln Savings Bank, 89 Tenn. 633, Brewer v. Boston Theatre, 104 Mass. 395, and Landis v. Sea Isle City Hotel Co., 53 N. J. Eq. 654.

OPINION BY MR. JUSTICE BROWN, October 8, 1900:

Appellant's history of the case is a flagrant violation of our rules. It teems with extracts from the testimony and is argumentative. It covers twenty-one pages. Two would have been more than sufficient for "a closely condensed statement of all the facts of which a knowledge" was necessary. We might very properly have imposed the penalty for this dereliction, but withheld it, that the appellant might be fully heard and no injustice done him. We regret to be compelled to call attention to this, and hope what we have said will be received as an admonition that disregard of the plain rules relating to the preparation of paper-books may force us to the imposition of their penalties.

The appellant filed his bill as an individual against individuals, praying for a decree that they pay to him his proportionate share of certain moneys which he alleged they had illegally taken as salaries from the treasury of the McClure Coke Company. At the time the money was taken from the treasury of the company, he was one of its stockholders. At the time he filed his bill, he was not. He had sold his stock nearly eighteen months before. His allegation is that he parted with it in ignorance of the appellees' impairment of the assets of the company, as they had concealed their conduct from him, and that after he had sold his stock, upon discovery of what they had done, he demanded "that they should make good to him his proportionate share of the moneys fraudulently abstracted by them as aforesaid, from the treasury of said company." The appellees deny that they had concealed their conduct from him, and aver he knew that they had voted themselves the increase of salaries shortly after they had done so. If the ap-

pellant did not part with his stock in ignorance of the conduct of the appellees, of which he complains, and sold it, knowing what they had done, his bill was properly dismissed. At no time did any of the moneys of the McClure Coke Company belong to him, and, even if the appellees had improperly taken it from the treasury, the appellant, though a stockholder, could not have sued for the recovery of what he might have considered was his proportionate share of the sum so taken. He might have instituted, or compelled the institution of, proper proceedings for its return to the treasury, where it would again have become an asset of the company and preserved the real value of his stock, but this was all he could do. He could simply have compelled restoration of the value to his stock which had been taken from it by the officers' improper appropriation of the company's moneys. In the present proceeding, as an individual, he seeks redress from the appellees, as individuals, for an alleged wrong resulting to him from their misconduct. If they did directly wrong him in his estate by fraudulently impairing its value, and, by their concealment of their misconduct, he parted with his property for less than it was really worth, he would, upon proper averments and proofs, be entitled to relief. He did aver, but, according to the referee's intelligent findings, after a careful and patient consideration of all the testimony, failed to sustain his averment, that the appellees concealed from him their illegal appropriation of the moneys, and kept him in ignorance of the same until after he sold his stock. These findings were the end of his case. The court below refused to disturb them, and we are convinced they ought not to be interfered with.

It is true the receipt given by Rafferty to Snyder contains the following : " It is, however, understood and agreed, that this receipt shall in no way prejudice or impair the right of myself, G. T. Rafferty, to compel Charles Donnelly and B. H. Ruby to account to me for any salaries illegally drawn by them from the McClure Coke Company." But these were idle words. Rafferty had no right to any of the money taken by Donnelly and Ruby which could be prejudiced or impaired. The money, if improperly taken from the treasury, belonged to the company, and the only right he had, we repeat, was to compel action for its return to the treasury, and even this right, which was inci- ·

dent to the stock, passed with the transfer of it to Snyder. No useful purpose can be served by saying more. In a well-considered report by the referee he recommended the decree made by the court below, which is now affirmed, and the appeal dismissed at the costs of the appellant.