# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

## DISTRICT OF COLUMBIA.

THE NATIONAL COUNCIL, JUNIOR ORDER UNITED AMERICAN MECHANICS OF THE UNITED STATES *v.* THE STATE COUNCIL OF THE DISTRICT OF COLUMBIA, JUNIOR ORDER UNITED AMERICAN MECHANICS.

FRATERNAL BENEFICIAL ASSOCIATIONS; POWER OF COMMITTEE TO REVISE CONSTITUTION; ADOPTION OF CONSTITUTION; JOURNAL OF LEGISLATIVE BODY.

1. A committee appointed by a fraternal beneficial association to revise the constitution and general laws of the order has no authority to originate and propose, without the notice required for amendments generally, the abolition of both constitution and laws.

2. The correctness of the journal of the   proceedings of the legislative body of a fraternal   order is not to be overcome by vague impressions of witnesses as to the result of a certain vote.

3. An entry in the minutes of the legislative body of a fraternal order that it was moved "that the report be accepted and the law adopted, which was agreed to," imports only that a quorum was present, and that a majority voted in favor of the motion, and does not import that the motion was carried by a two-thirds vote of members present, as required by the constitution of the order.

4. A revised constitution of a fraternal order adopted without compliance with the requirements of the old constitution as to the procedure in such cases is invalid; and a bill in equity by the national council of such an order, against a state council, to compel the surrender of its charter and to enjoin it from acting thereunder, on the ground that the charter had been revoked by the national judiciary, will not lie where the national judiciary so revoking the charter was created under a revised constitution of the order, invalidly adopted.

No. 1518.    Submitted December 13, 1905.    Decided February 6, 1906.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia dismissing a bill for an injunction.                              *Affirmed.*

## STATEMENT OF FACTS:

The bill of complaint in this cause was filed November 21, 1900, by the National Council Junior Order United American Mechanics of the United States of North America, a body corporate, as complainant, against the State Council of the District of Columbia Junior Order of United American Mechanics, a body corporate, and John E. Crampton, Clifton M. Bigelow, George Keithley, William L. Boyden, and Dwight M. Weeks, as members of the executive board and officers of such corporation.

It alleged that the Junior Order of United American Mechanics was a secret, beneficial, and patriotic order or association, and that the order was constituted of the supreme head of the order, the complainant, which had sole authority under the constitution and laws of the order to grant, issue, and revoke charters to State councils and to subordinate councils not under the jurisdiction of State councils, and several so-called State councils, of which the defendant, prior to the revocation of its charter, was one; that, because of the refusal of the defendant State council to pay a certain *per capita* tax of 15 cents, levied by the National council, charges had been preferred against the defendant, and, after a hearing, its charter had been revoked by

the national judiciary of the order, which passed a decree requiring the defendant to surrender to the national secretary its charter and all rituals, books, papers, moneys, property, or effects of the order, etc., in its possession; that, notwithstanding said revocation, the defendant continued thereafter to assume to be the supreme head in the District of Columbia of the order, and to hold meetings, and to transact business as such, and to make use of the rituals of the order; and thereafter organized in the District of Columbia under its laws as a body corporate. The bill prayed for a preliminary and final injunction which would prevent the defendant from holding itself out as a State council of the order, from acting or conducting business as a representative of the order, and from using or employing the name and title "Junior Order of United American Mechanics," and for a decree which would compel the surrender to the complainant of the charter granted by the complainant to the defendant State council and afterwards revoked, and also of all published rituals, books, papers, moneys, etc., belonging to the order, in the possession of the defendant.

The separate answer of the defendant State council, filed January 31, 1901, among other things denied the validity of the imposition of the *per capita* tax, and of the decree of revocation of its charter, and declared them to be void for the reason, among others, that the revised constitution and laws of the order under which it was operating, and which created the national judiciary, had not been validly adopted. The answers of the other defendants adopted the allegations of the answer of their codefendant as their own. The cause was submitted to the court below upon testimony taken by the parties, and also upon an agreement of counsel for the parties. The court below passed a decree on November 14th, 1904, dismissing the bill of complaint with costs. An appeal was taken by the complainant to this court from such decree.

The further material facts will be found stated in the opinion of the Court.

*Mr. A. A. Birney, Mr. George Francis Williams,* and *Mr. A. W. Shunk* for the appellant.

*Mr. J. J. Darlington* for the appellees.

Mr. Justice McComas delivered the opinion of the Court:

The case before us is the result of an unhappy difference in a meritorious secret order,—such a quarrel as frequently occurs in like societies. This quarrel has induced similar appeals for adjudication of differences in the order by the courts in a number of the States. The decisions in several States have not ended the controversy. We think it unlikely that any decision of this court can put an end to such controversy. Therefore, it would be futile to decide questions which should be decided if the decree of this court had efficiency beyond this District of Columbia. We confine our discussion to so much of the matter as is necessary to the decision of this case.

It appears that the order whose warring members are litigants here exists in nearly all the States of the Union. The courts are not eager to adjudicate such controversies as these. It is not necessary in this instance to discuss or decide all the questions raised by the record. The material question here concerns the validity or invalidity of the revised constitution and general laws by the National council at the annual session at Minneapolis in June, 1899.

The Junior Order of United American Mechanics is a secret order, a patriotic fraternal beneficial association, which started in Pennsylvania a half century ago and spread over most of the States and Territories, and numbered nearly 200,000 members a few years ago. The National council is the head of the order, with authority to grant and revoke the charters of State councils. The State council comes next, with authority over subordinate councils within its territory. State councils consist of representatives from subordinate councils, and the National council is made up of representatives from State councils, from subordinate councils not affiliated with State councils, and of cer-

tain past officials.   The National council is the supreme power in the order.

In 1869 the National council was first constituted as the supreme head of the order, subject to the limitations of the constitution and general laws of the order, and later to the restrictions of its charter, for it was incorporated in Pennsylvania in 1893. The National Council of the Junior Order of United American Mechanics, the complainant in the bill below, is the appellant here.   The State Council of the District of Columbia, Junior Order of United American Mechanics, the defendant below, is the appellee here.   Certain officers made defendants below are formal parties merely.   By its decree the learned court below dismissed the appellant's bill.

In 1894 several subordinate councils of this order, then existing in the District of Columbia, were granted a charter as a State council by the National council of this order.   By virtue of such charter the State Council of the District of Columbia duly exercised jurisdiction over all the subordinate councils of the order in this District, and maintained harmonious relations with the National council until the year 1899.   In that year the National council, at its Minneapolis session in June, 1899, in which the appellee, by its chosen representative, participated as a State council, it appears that a revised constitution and general laws were submitted for adoption in pursuance of a report of a committee on laws made at that session, such committee having been appointed to perform such duty of revision at the session of the National council the previous year held at Louisville, Kentucky, in June, 1898.

The National council, although the supreme head of the order, was subject to the limitations and restrictions of its own charter, and of the constitution and laws of the order.   Among the latter is article 25 of the constitution, which is as follows:

"Sec. 1. This constitution, or the general laws of the order, shall not be altered or amended oftener than once in five years, unless by a two-thirds vote of the members present at a regular session of the National council, or a special session called for

the purpose; provided all alterations or amendments shall be in writing, signed by two or more members of the National council, and shall be referred to the committee on law before final action is taken thereon.

"Sec. 2. All proposed alterations or amendments shall be examined by the committee on law, and reported to the National council at its next session, together with such further amendments and recommendations as may be deemed necessary to preserve the consistency and sense of this constitution and the general laws, provided that, when the National council refers the general laws or constitution of the National council to a committee for revision, such reference shall be sufficient notice of any proposed alteration or amendment.

"Section 3. The actions and recommendations of the committee shall be published at least thirty days prior to the next session of the National council, when final action may be taken."

The Pennsylvania charter of the order and the constitution, prior to the Minneapolis sessions, stated the following to be the objects of the order:

"First. To maintain and promote the interests of Americans, and to shield them from the depressing effects of foreign competition.

"Second. To assist Americans in obtaining employment.

"Third. To encourage Americans in business.

"Fourth. To establish a sick and funeral fund.

"Fifth. To maintain the public-school system of the United States of America, and to prevent sectarian interference therewith, and uphold the reading of the Holy Bible therein."

Article 2 of the constitution, section 2, forbids an alteration of the "objects of the order," except in the mode prescribed in that section, which we quote:

"Section 2. The objects of this order shall not be altered unless proposed in writing, and, if adopted, the alteration shall be submitted to the members of the order for a vote thereon, and shall be of no effect unless approved by a majority vote."

It appears that a sixth "object of the order," namely, "to

establish or to erect an orphans' home, as a home for the orphans of deceased members of the order, and to maintain the same," was added conformably to the method prescribed by the constitution of the order. It appears from the record that proposals to alter the objects of the order were uniformly submitted at an annual session of the National council, were referred to the subordinate councils for a vote of the membership, and in obedience to such vote were either adopted or rejected at the next succeeding annual session of the National council. This was the method prescribed and the method followed until the Minneapolis session of the National council of the order. It appears that at the annual meeting of the National council held at Louisville, Kentucky, in the year 1898, amendments to the constitution were adopted according to the method just recited. Such amendments related to membership, to the number of officers, to appeals from subordinate councils to State councils, and to the filling of vacancies occurring in the offices of State councils. At that annual meeting certain amendments to the constitution and general laws were presented, which led to the adoption of a resolution at this meeting referring the general laws and constitution of the National council and of all subordinate councils to what was known as the "law committee" for a general revision. At the ensuing annual session at Minneapolis, in June, 1899, the same law committee reported for adoption changes in the constitution and several changes in the statements of the objects of the order. It also recommended changes in the laws relating to regalia. We note that the general laws of the order had always hitherto contained a provision that the law of the order relating to regalia should not be altered unless the proposed alteration were first submitted to a vote of the members of the order, and a majority of the votes were given in favor of such alteration.

By the revision reported by the law committee, the *first* object of the order, which read thus, "to maintain and promote the interests of Americans, and to shield them from the depressing effects of foreign competition," was changed to read thus,

"to maintain and promote the interests of Americans, and shield them from the depressing effects of unrestricted immigration."

Now, membership in this order was limited to native-born white, male citizens, and the first object of the order was aimed to support the policy of protection to American labor against the competition of cheap foreign labor.   It may have appeared to the law committee that these native American workmen were fully protected against the depressing effects of foreign competition by tariffs upon the product of laborers working for cheap wages, for all the while, at the rate of about a million annually, foreign workmen and their families were coming to our shores and could on our soil directly compete at a less wage rate with native-born Americans on American soil; and it may have appeared to the committee that they could best maintain and promote the interests of Americans by excluding much of such immigration, that they could best escape the depressing effects of foreign competition by preventing the natural depressing effects of unrestricted immigration to our shores of hundreds of thousands of such low wage earners.   We do not agree with the argument of counsel that this change was radical and necessarily imported a change of the former object of the society to a new object which was consistent with the policy of free trade.   In any view, we think this change is not material to the question involved in this case.

The *fourth* object of the order, which was "to establish a sick and funeral fund," was changed so as to read, "to establish an insurance branch and a sick and funeral fund."

This change constituted a radical departure from the objects of the order hitherto.   It is questionable whether such insurance scheme was permissible under the Pennsylvania charter of the National council.

Judge Audenried, in the court of common pleas, No. 4, of Philadelphia, in the case of *Commonwealth of Pennsylvania ex rel. Woods et al.* v. *Wobensmith et al.,* in his opinion rendered May 10, 1904, concludes:   "If the National council *lacks, as we think it does, the power to change the objects of the order,*

its attempt to do so amounts to nothing, except it be regarded as a preliminary step to its submission of the question of making such a change to a vote of the membership at large."

At least, if not *ultra vires,* such a radical change in one of the objects of this order was required by its constitution and laws in force to be submitted to a vote of the membership, and to be adopted only after a majority of the members had approved the change; and such method was not pursued.

It is true that the proposed Minneapolis revision of the objects, constitution, and laws substituted a different method for changing the objects of the order.   This brings us to the main question in dispute in this case:   Was the scheme of revision of objects, constitution, and general laws, proposed by the law committee to the Minneapolis session, lawfully adopted?

The validity of the revised constitution and laws, and, of course, of the objects of the society, also revised, is strongly attacked by the appellees.   To a part only of the appellees' reasoning can we assent.   It is conceded that the constitution had been amended in certain particulars at the annual session of the National council at Louisville, Kentucky, in June, 1898. It appears that at the annual session in 1897 the constitution was amended.

Article 25, as we have said, in section 1, provides that neither the constitution nor the general laws should be altered or amended more than once in five years, unless by a two-thirds vote of the members present at a regular session of the National council.   The alterations and amendments made at Louisville, in the constitution and general laws in 1898, conformed to this method.   It was the valid method for a general and material revision of the constitution and general laws by the National council at its annual session in Minneapolis in June, 1899.

We construe article 25, section 1, to say that no changes in the constitution or general laws can be made oftener than once in five years, unless by the affirmative vote of two thirds of the members present at a regular session of the National council (or at a special session called for the purpose); that alterations

or amendments (proposed) should be in writing, signed by two or more members of the National council, and referred to the committee on law.

We construe article 25, section 2, to say that all (such) proposed alterations or amendments (so referred) shall be examined by the committee on law and reported to the National council at its next session (meaning its next regular annual session or its special session called for the purpose). The committee on law (reporting favorably any such proposed amendments may together with such) report such further amendment and recommendations as *may be necessary* to preserve the consistency and sense of the constitution and general laws. When the National council refers the general laws or constitution to a committee for revision such reference shall be sufficient notice of any *proposed* alteration or amendment. The appellant contends that, because the National council referred its constitution and general laws to the law committee for revision at the Louisville session in 1898, such reference was sufficient notice of any *proposed* alterations and amendments, and enabled the National council to adopt them at the session at which they should be proposed without waiting until the next session, as provided by section 2 of article 25. If this conclusion be correct, there would be little protection against ill-considered changes, and no permanency in the organic law. There would be no notice of proposed alterations given to State councils or to the members of the order if this were true. Twice in section 2 occur the words "proposed alterations or amendments." "All proposed alterations or amendments shall be examined by the committee on law and reported to the National council at the next session." Such committee may report such alterations or amendments at the next session, "with such further amendments and recommendations as may be deemed necessary to preserve the consistency and sense of this constitution and general laws." And then follows the proviso upon the terms of which the appellant makes its claim, namely, "that when the National council refers the general laws and constitution of the National council to the

committee for revision, such reference shall be sufficient notice of any proposed alteration or amendment." It seems that it is only "proposed alterations or amendments" upon which the committee on law have authority to report, of course taking leave to make mere verbal amendments to preserve the consistency and sense of the text of the constitution and general laws; in a word, to act as a committee on style. The chronic tendency in such societies to tinker with the laws when nothing else occurs to them to do seems to have been in the mind of this society, and it provided a method by section 2 whereby the State and subordinate councils and the membership should be notified of proposed alterations or amendments in the organic law made in the National council before final action thereon,—notified in time to elect representatives who could express the sentiments of the membership concerning important changes.

We quote from the agreed statement of facts the following:

"At the Louisville convention of 1898 the general laws and constitution of the National council, and all subordinate councils, were referred to the law committee for 'a general revision.' There being no alterations or amendments then pending which required any changes in the objects of the order, or in the laws in reference to its regalia, amendments were adopted relating to membership in the board of officers, appeals from subordinate councils to State councils, and providing for filling the vacancies in the office of State council, through death or other causes, and other amendments which were under consideration were postponed until the coming in of the report of the law committee on general revision. Further, an amendment being offered, it was voted as follows, namely: 'That, in consideration of the National council having referred the laws to the incoming law committee for general revision, that all further amendments be laid over.' The amendments unacted upon because of the foregoing resolution related to the following matters, namely:

"The reinstatement of suspended members, and the payment of dues by nonbeneficial members; the use of the name, title,

motto, or initials of the order; with regard to membership of committees; libeling members of councils; indorsing political candidates or parties; prohibiting bringing liquors into the council rooms, and use by members of official names in private business enterprises."

The action referred to was this:

"On page 113 of the printed proceedings of said Louisville session of 1898 appears the following: 'P. S. C. Collins, of Pennsylvania, moved to refer the general laws, constitution of the National council and subordinate councils under the jurisdiction of the National council to the incoming law committee for general revision, which was agreed to.' "

Thus, proposed amendments were postponed until the law committee made its report.

In *Vinsant* v. *Knox,* 27 Ark. 266, 272, is a pertinent ruling. The Constitution of Arkansas authorized a commission of three persons "whose duty it shall be to revise and rearrange the statute law of this State, both civil and criminal, so as to have but one law on any one subject." The commission was required to report to the general assembly for adoption or modification. The commission recommended certain new laws in their report, which report the assembly adopted. The question arose whether the power to "revise" included power to frame new provisions and to admit of their being enacted into law by adoption instead of by the usual legislative procedure.

It was held that the word "revise" gave no power to the commission to originate; that the powers conferred by the use of the term "to revise the statute law" included some power of amendment, but such powers must relate to something already in existence, and gave no authority to the revisors to originate laws for adoption by the legislature or to propose bills to be enacted by the legislature. The court said: "Our opinion, * * * therefore, is that the clause, taken as a whole, simply means such a modification and amending of the statute laws then in existence, in addition to their rearrangement, as would render them consistent among themselves, and in harmony with the new constitution of the State; nothing more, nothing less."

The court held that such a provision gives power to revise, and to amend in so far as is germane to revision, but no power to "propose" wholly new provisions, which should slip through and become laws in a manner different from the prescribed legislative procedure.

In this case the appellant's claim is that a committee appointed to revise a constitution and general laws may, instead of revising, validly originate and propose, without the notice required for amendments generally, the abolition of both laws and constitution. This is what the committee proposed in terms, and what the Minneapolis convention attempted to enact by the adoption of its report.

Again we quote from the agreed statement of facts in the record:

"Among the changes from the former constitution in that recommended by the law committee were the following:

"1. The creation of a national judiciary, with the powers set forth in article 9 of said report, complainant's exhibit Y, pages 16 *et seq.*

"2. Changing the first object of the order from, 'to maintain and promote the interest of Americans and shield them from the depressing effects of foreign competition,' to 'maintain and promote the interests of Americans and shield them from the depressing effects of unrestricted immigration.'

"3. Changing the fourth object of the order from 'to establish a sick and funeral fund' to 'establish an insurance branch, and a sick and funeral fund.'

"4. Authority to the National council, by law, to provide for the insurance of the members of the order.

"5. Authority to the National council to provide for the affiliation with the order of a uniform rank.

"6. The annulling of all constitutions, laws, and decisions of the National council, etc., except as specifically provided in the proposed new constitution.

"7. Submitting future amendment or amendments to vote of

the several State councils, instead of submitting changes in the objects of the order to a vote of the members of the order.

"8. Changes in the ratio of representation of the State councils in. the National council.

"The proposed new 'national laws' differed from the former general laws in the matter of regalia and in other particulars."

The constitution and general laws reported by the law committee to the National council and adopted by it at the same session at Minneapolis, was in total disregard of article 25, section 3, requiring that the actions and recommendations of such committee shall be published at least thirty days prior to the next session of the National council. We cannot agree with the appellant, that, if the National council violated the organic law, in this court the appellees, the State council, and certain officers thereof who may be victims of such violation, are estopped from asserting such transgression by the appellant. We are convinced that the National council at Minneapolis, in its anxiety to adopt a new body of laws, violated nearly every provision of article 25 of the constitution of the order.

We proceed to consider the procedure whereby it is claimed the report of the law committee was made to the National council at Minneapolis and promptly adopted as the new constitution and the new laws of the order. The testimony of members attending the session and hostile to the majority is entitled to no weight. Such a mode of attacking the enactment and validity of a State statute or of an act of Congress would not be tolerated. Usually constitutional provisions for the enactment of Federal or State statutes prevent such collateral attack. The appellant here, however, is not a legislature, but only the legislative body of a secret society; yet the presumption of the correctness of the journal of its proceedings should not be overcome by vague impressions about the result of the vote. It is not to be permitted to defeated members of representative assemblies of such a society by such parol testimony to rewrite the minutes of proceedings. The presumption in favor of the correctness of the journal of proceedings in the absence of any suggestion of error,

by a motion at the next session of this body to correct the journal, is a reasonable presumption. All the testimony of officers and members concerning the passage of these laws, though biased, was probably sincere, and yet all of the witnesses were probably mistaken in saying that there was a demand for yeas and nays and a refusal of the call by the presiding officer, and that the new constitution and laws were adopted by a *viva voce* vote, immediately after such refusal to call for the yeas and nays. These witnesses appear to have confounded two different occasions.

It is conceded that the pamphlet containing the official proceedings of the 31st annual session of the National council of this order, held at Minneapolis, Minnesota, in June, 1899, pages 114 to 118, inclusive, contains the recorded minutes of the sessions at Minneapolis relating to the subject now discussed. In the minutes of the morning session of the third day, June 22, 1899, page 114, it appears that the law committee of the National council submitted its report of a revision of the national constitution and laws of the order, and thereupon P. S. C. Collins, of Pennsylvania, moved that the National council resolve itself into a committee of the whole for the consideration of the report of the law committee. In other words, Collins moved that the council go into committee of the whole for the purpose of considering the proposed scheme of constitution and laws submitted by the committee for adoption. It was upon this motion to go into committee of the whole, as appears upon page 115, a proper mode to consider the report by sections and to submit it to amendment, that the yeas and nays were called for and the presiding officer of the National council refused to order the yeas and nays.

It appears that article 22 of the constitution provides that the transaction of business in the National council should be governed by Matthias's Manual, which, on page 34, note, states that the call for yeas and nays only requires that the call be seconded or be made by two members. Thereupon three members appealed from the refusal of the presiding officer to recognize the

call for the yeas and nays, and upon that appeal the division re-
sulted in 76 yeas and 46 nays, and the National council resolved
itself into the committee of the whole.    The real contest, accord-
ing to the journal, occurred over this motion of Collins.

This court, of course, is aware that by general parliamentary
law a motion to go into committee of the whole only requires a
majority vote.    In this instance those who objected to the pro-
posed revision apparently believed that a two-thirds vote was
required to go into committee of the whole to consider the pro-
posed revision of the constitution and laws, and at this stage
believed that they had been defeated by the arbitrary ruling of
the presiding officer.    At the afternoon session on the same day
the National council again went into committee of the whole,
and subsequently the committee of the whole arose, and through
its chairman, Powell, reported to the National council a code of
laws,—that is, the revised constitution and general laws.    From
the minutes it appears that Collins moved that the report be ac-
cepted and the revised constitution and laws be adopted, *which
was agreed to,* in the language of the minutes.    It is very
probable that there was no division called for, no demand for
the yeas and nays at this time, and, had the minutes stated all
that was required to be stated, we would  probably  have  had
little difficulty respecting important points in this case.

It is curious to observe that all the witnesses who strenuously
testified that they were present, and that the yeas and nays were
called for upon the adoption of the  revised  constitution  and
laws, and that it was plain that two thirds had not voted for the
adoption, are likely in error, and that the real contest of the op-
position to which all testify occurred upon the motion to go into
committee of the whole at the morning session.

We agree with the appellant that the integrity of the official
proceedings of this order cannot be invalidated by such parol
testimony.    We agree, also, that ordinarily the minutes must
be taken to import that the proceedings were regular, and that
all of the ordinary and customary incidents to give validity to
the action recorded duly transpired.    We cannot agree, how-

ever, that this language, "P. S. C. Collins, of Pennsylvania, moved that the report be accepted and the laws adopted, *which was agreed to,*" imports all of the things required by article 25 of the constitution to bring about a radical comprehensive revision of this very constitution and these general laws. The statement of the minutes that Collins's proposition "was agreed to" *imports only that a quorum of the National council was present, and that a majority voted for it.*

"The voice of the majority decides, for the *lex majoris partis* is the law of all councils, elections, etc., where not otherwise expressly provided. Hakew. 93. But if the House be equally divided, *semper presumatur pronegante;* that is, the former law is not to be changed but by a majority. Towns, Col. 134."

See Jefferson's Manual, page 132, of United States Senate Manual.

In respect of any matter of legislation within the power of the National council, under the limitations and restrictions and according to the general order of business of the National council, ordinarily a majority vote would decide it. When the body itself, which had at each of its annual councils for several years prior to the Minneapolis session amended the constitution and general laws, undertook in the fashion we have related to make a revision of the same, it was competent for the body so to do under section 1 of article 25, by a two-thirds vote of the members present at such regular session of the National council.

If on the minutes it had been stated that the constitution and laws proposed had been considered, and that two thirds of the members present had voted in favor of the same as reported by the law committee, and the same were adopted by a two-thirds vote, or any language substantially equivalent, we concede that such entry on the journal of the National council would have been sufficient proof that two thirds had so voted. We cannot agree that the mere entry on the journal "Agreed to" imports due compliance with any or all of the requirements of article 25 of the constitution. It appears that the report of the law committee submitting the revised constitution and general laws was in many respects a careful and commendable work, and,

had it been regularly adopted, the appellant would have been much better circumstanced in claiming the relief prayed for in its bill of complaint. In our opinion the new constitution and laws were not validly adopted.

It is not necessary to consider the claim that fundamental changes in the constitution and laws proposed, if such failed of adoption at the Minneapolis session, were taken up at the next annual session of the order in 1900 and then ratified at Philadelphia, because no such action was taken. What actually happened at the annual session of the National council at Philadelphia, on June 19, 1900, [was that it] passed a resolution reciting that a Pennsylvania court had in March of the same year declared null and void all acts, proceedings, ordinances, and laws enacted at Minneapolis in 1899 by the National council of this order, upon the ground that such session was held beyond the State of Pennsylvania. By this resolution the National council, in session at Philadelphia, ratified all proceedings of the National council whenever and wherever assembled. If the revised constitution had not been adopted at Minneapolis, it is obvious that this general resolution could not operate to make valid the new constitution and laws. The adverse decree just referred to was reversed in *Derry Council No. 40* v. *State Council*, 197 Pa. 423, 80 Am. St. Rep. 838, 47 Atl. 208.

Since the appellant has failed to convince us that the revised constitution and general laws are valid, it is unnecessary for us to consider the other subjects involved in this appeal. Especially we omit the revoking of appellee's charter by the decree so much discussed.

The national judiciary was the creature of the Minneapolis revision of the constitution and general laws, and, as the appellant has failed to convince us that its creation was valid, the judgment and decree of the national judiciary revoking the charter of the appellee cannot avail the appellant here. Its decree is *coram non judice.*

This patriotic order, after a half century of existence, it is to be hoped, may yet find some method of compromise and

D. C.]                    Syllabus.

agreement whereby its usefulness may be preserved and its various subordinate bodies harmonized. The attitude of the appellee, which is one of open revolt against the supreme head of the order, is not pleasing. Its incorporation under the general incorporation law of this District, taking by force of the local incorporation laws the name with which it was clothed by its charter from the National council of its order, is bound to work confusion and injustice; but, because the appellant has failed to convince us upon the crucial point, the validity of the adoption of the revised constitution and general laws at Minneapolis, it is useless now to consider this point.

The learned court below dismissed the appellant's bill, and the decree of that court should be affirmed, with costs, and it is so ordered.                                   *Affirmed.*

Mr. Chief Justice SHEPARD concurs in the result.