## Levy v. Affiliated Fund, Inc.

*Fred Lowenschuss*, for plaintiffs.
*Robert H. Young, Jr.*, for defendant.

GREENBERG, *J.,* December 23, 1980—This matter is before the court on the preliminary objections of defendant, Affiliated Fund, Inc., to plaintiffs' class action complaint in equity for the creation of a constructive trust on funds received or to be received by defendant as a result of the settlement of a derivative shareholder's suit in New York.

On May 15, 1978 Reba Levy and Bernard Konsar, Executors of the Estate of Sarah Konsar, filed this action in equity, individually and on behalf of persons who were shareholders of defendant at any time during the period of March 1, 1967 to May 1, 1975 (hereinafter damage period). Affiliated Fund, Inc. (hereinafter referred to as the Fund) is an open end, diversified investment company with approximately 178,000 shareholders. Plaintiffs seek to impose a constructive trust upon the moneys and other benefits received or to be received by the Fund as a result of the settlement of a certain derivative action, Papilsky v. Berndt, previously pending in the United States District Court for the Southern District of New York, 71 Civ. 2534. That case involved a shareholder's derivative suit filed on behalf of the Fund in which the District Court found that the Fund's investment adviser, officers and directors were liable for failing to recapture brokerage

and underwriting commissions and tender offer fees during the damage period and ordered the case to proceed to a determination of compensatory damages: Papilsky v. Berndt, 1976-77 CCH Fed. Sec. L.Rep. ¶95, 627. [For prior history, see 333 F. Supp. 1084 (S.D.N.Y. 1971), aff'd, 466 F. 2d 251 (2d Cir. 1972), cert. den., 409 U.S. 1077 (1972).]

On April 13, 1977 the parties to the Papilsky action entered into a stipulation of settlement pursuant to which the Fund's investment adviser agreed to reduce its management fee by $29,166.67 per month for a period of 120 consecutive months, for an aggregate amount of $3,500,000. After notice to the Fund's shareholders and a hearing, the proposed settlement was approved by the District Court on June 8, 1977.

Sarah Konsar (and thereafter her estate) was a stockholder of the Fund during the entire damage period, having purchased a total of 2,185 shares of the Fund between September 15, 1958 and December 14, 1969, as well as being a stockholder at the time of the institution of the derivative suit and the filing of the stipulation of settlement.

Upon Sarah Konsar's death on November 5, 1976 the certificates of said shares were re-registered in the names of the executors of the estate and on April 25, 1977 the executors redeemed the 2,185 shares for the sum of $17,250.43. This redemption price was based upon the Fund's net asset value prior to any amounts previously diverted by defendants in Papilsky, supra.

On June 13, 1977 the estate, through its attorneys, filed a motion to intervene in the derivative action together with an objection to the proposed settlement in an attempt to assert the equitable issues now pending before this court. The United

States District Court approved the stipulation of settlement on July 1, 1977 and a judgment was entered on July 6, 1977. The District Court denied the estate leave to intervene for the purpose of filing an intervenors' complaint but granted it leave to intervene for purposes of prosecuting an appeal.

On January 1, 1978 the United States Court of Appeals for the Second Circuit affirmed the District Court's refusal to permit the estate to intervene as plaintiff for the purpose of filing an intervenors' complaint and held that the estate had no standing to object or appeal the settlement of the shareholder's derivative action. The court based its decision on two grounds, namely, (1) the motion to intervene was untimely and (2) the estate lacked standing to object to the settlement because it was not a shareholder at the time of its objection. The present action before this court followed.

Plaintiffs' complaint alleges that the Fund is under a fiduciary and equitable duty to distribute the amounts recovered under the Papilsky settlement to those shareholders who held stock during the damage period.

Plaintiffs assert that the unique relationship which exists between a shareholder and a mutual fund requires, in a case in which a mutual fund recovers derivatively for moneys that were previously diverted by the fund's directors or investment adviser, that the amounts recouped be held for the benefit of those persons who were shareholders at the time that the funds were diverted. Since the redemptive value of a mutual fund share bears a direct relationship to the total net assets owned by the fund, the redemption value is always directly affected by the net value of the total assets. Therefore, it is argued by plaintiffs that the Fund

has an equitable duty to allow the amounts recovered to "flow-through" in a pro rata fashion to those who have sustained or will sustain losses upon redemption of their shares as a direct result of holding the shares during the damage period.

Plaintiffs further argue that it would be unjust enrichment to allow the Fund to keep the difference between what it paid to the redeeming shareholders and what it would have paid to such shareholders had the settlement proceeds been included in the net asset value of the Fund when the redemption value of such shares was being calculated. They contend that the appropriate remedy is to impose a constructive trust upon the settlement proceeds in order to prevent present and future shareholders of the Fund from realizing a windfall profit and to insure that the parties who actually suffered or will suffer injury are compensated for their losses.

Defendant's preliminary objections raise the issue that this court lacks jurisdiction over the parties due to improper service upon the Fund, a nonregistered foreign corporation which allegedly was not and is not doing business in the Commonwealth.

Defendant also contends that this action should be dismissed under the doctrine of forum non conveniens since it is alleged that if this action were permitted to proceed to trial, this court would be required to resolve questions of foreign law involving the internal affairs of a foreign corporation.

Additionally, defendant argues that plaintiffs have failed to join all necessary parties in this action and that appropriate joinder of all shareholders who are nonresidents of Pennsylvania cannot occur in light of the overwhelmingly large number of such nonresident shareholders.

Finally, defendant contends that plaintiffs have

failed to state a claim upon which relief may be granted because shareholders of an open end investment company have no right to moneys or other benefits received by the corporation under an approved settlement of a cause of action which belonged to the corporation.

Because of our rulings as hereinafter set forth we do not reach any consideration of the first three objections.

We believe that the final preliminary objection set forth above, which is in the nature of a demurrer, should be sustained and the class action complaint in equity dismissed because of the well established principle that a stockholder has no right to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in the value of his corporate shares resulting from the impairment of corporate assets. See Kauffman v. Dreyfus Fund, Inc., 434 F. 2d 727 (3d Cir. 1970).

The injury alleged to have been inflicted upon plaintiffs consists of the diminution in value of their corporate shares in the defendant Fund, which diminution is alleged to have been caused by those actions which were the subject of the derivative suit instituted on behalf of the Fund in June, 1971. See Papilsky v. Berndt, 1976-77 CCH Fed. Sec. L.Rep. ¶95, 627 (S.D.N.Y. 1976). Initially, it should be noted that the recovery effected by the settlement in Papilsky v. Berndt belongs to the Fund, in that law deems that the real party in interest in a derivative action is the corporation and that the proceeds of any recovery belong to it: Ross v. Bernhard, 396 U.S. 531, 538 (1970); In Re Pittsburgh & L.E.R. Co., 543 F. 2d 1058, 1068 (3d Cir. 1976).

In this situation the courts have consistently held

that the primary wrong is to the corporate body and that the shareholders, having experienced no direct harm, possess no primary right to sue. See Ash v. International Business Machines, 353 F. 2d 491 (3d Cir. 1965), cert. denied, 384 U.S. 927, 86 S.Ct. 1446 (1966). With respect to the instant case, we feel compelled to follow the principle set forth above because we perceive no real distinction between granting shareholders a primary right to sue directly for damages suffered as a result of wrongs committed against the corporation and allowing such shareholders the right to recover against the corporation directly for the benefits the corporation received from a settlement of an earlier derivative action.

Plaintiffs attempt to distinguish the instant case from the clear rulings in the cited cases and advance two theories in support of their position. First, the nature of a mutual fund such as defendant is such as to make it different from the ordinary business corporation where the value of the stock is determined by market fluctuation rather than net asset value as in the case of a mutual fund and second, defendant and other stockholders who purchased or will purchase stock after June 27, 1977 will be unjustly enriched since they will be receiving the benefits obtained by the corporation for wrongdoing which occurred at a time when they were not stockholders at the expense of plaintiffs and others who, because they sold their stock, will not share in those benefits even though they were stockholders at the time the alleged wrongdoing occurred. Plaintiffs in this connection ask that defendant be deemed to be a constructive trustee for plaintiffs and other similarly situated stockholders for the amounts claimed to be due them.

We will discuss each theory separately.

## The Mutual Fund—Net Asset Theory

Plaintiffs essentially contend that defendant is a mutual fund and as such is a usual corporate structure in which the value of the stock is determined by the net assets rather than market fluctuation. Thus, when plaintiffs redeemed the shares they suffered a loss because the value had been reduced by the wrongdoing and they could not be recouped as a result of the settlement since they were no longer stockholders. Plaintiffs term this a unique relationship which would entitle them to participate in the suit and the proceeds of the settlement. As previously set forth herein, plaintiffs attempted to intervene in the action in the District Court in the Southern District of New York, Papilsky v. Berndt, which intervention was refused by the Second Circuit Court of Appeals.

A substantially similar argument was made in Kauffman, supra, in connection with a shareholder's right to maintain a derivative action where the shareholder had sold the stock at the time the suit was started. There it was held that the shareholder of a mutual fund does not have a personal cause of action to recover damages allegedly sustained by reason of the illegal practices of investment advisors to the fund in which he owned stock. The court after recognizing the fundamental tenet of corporation law which treats the corporate body as an entity states at 434 F. 2d 727, 733 (3d Cir. 1970):

"That the worth of a share of appellee's stock is directly proportionate to the value of a mutual fund's net assets is insufficient to destroy these separate identities, to alter the basic shareholder-corporation relationship, and to thereby confer upon appellee legal rights peculiar to the corporation. Nowhere in the cases do we find authority for

the proposition that the ease and capacity of evaluating a shareholder's redemptive value of mutual fund shares can vest in him a pro-rata share of the corporation's primary right to sue."

It is clear therefore that the nature of defendant's corporation as a mutual fund furnishes no basis for distinguishing it from any other business corporation for the purpose suggested by plaintiffs and we thus find no merit in this argument.

## The Unjust Enrichment—Constructive Trustee Theory

Plaintiffs here make essentially an equitable argument asserting that they and others like them should be permitted to partake in the settlement; otherwise, the Fund and other stockholders would be unjustly enriched at their expense. They ask that the court designate defendant as a constructive trustee for proportionate amounts due to persons who owned stock during the period of wrongdoing and who have already sold or will sell it prior to the receipt of all the settlement funds.

At first glance this seems to have some appeal but before we can assess its merit completely it would be wise to discuss the concept of constructive trusts.

A constructive trust arises "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." 5 Scott, Trusts §§462, 462.1. See Yohe v. Yohe, 466 Pa. 405, 353 A. 2d 417 (1976); Buchanan v. Brentwood F.S. & L. Assoc., 457 Pa. 135, 320 A. 2d 117 (1974); Kimball v. Barr Township, 249 Pa. Superior Ct. 420, 378 A. 2d 366 (1977); Restatement, Restitution, §160.

There is no rigid standard for determining whether the facts of a particular case justify the imposition of a constructive trust: Stauffer v. Stauffer, 465 Pa. 558, 568, 351 A. 2d 236 (1976). As Justice (then Judge) Cardozo stated in the seminal case of Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 386, 389, 122 N.E. 378, 380-381 (1919):

"A constructive trust is the formula . . . which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee. A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief."

See, e.g., Buchanan v. Brentwood F.S. & L. Assoc., supra, at 152; Stauffer v. Stauffer, supra; Shapiro v. Shapiro, 424 Pa. 120, 129, 224 A. 2d 164 (1966).

Although we are not bound by the Federal court's reasoning for dismissing plaintiffs' motion to intervene in the Papilsky v. Berndt settlement, we nevertheless find it to be quite persuasive. Honorable Irving R. Kaufman, of the United States Court of Appeals for the Second Circuit, made the following statement in affirming the lower court's denial of plaintiffs' motion to intervene (p. 3, transcript of 1/4/78):

". . ., [W]e find the motion to intervene . . . intolerably tardy under Rule 24. . . . This litigation has been pending for six years. Notice of this lawsuit has appeared in every proxy statement and prospectus of the fund since 1972 . . . and in 1976, each stockholder received a letter explaining the finding of liability. . . ."

We find that because plaintiffs have failed to act with the due diligence that the law requires, the equity of the transaction does not mandate the imposition of a constructive trust: Beatty v. Guggenheim Exploration Co., supra. As Judge Kaufman aptly pointed out, the Fund never attempted to conceal the existence and progress of the Papilsky v. Berndt lawsuit. On the contrary, plaintiffs received actual notice of the lawsuit for the six years that the lawsuit was pending. In every proxy statement and prospectus, a statement referring to the lawsuit appeared. Furthermore, in 1976, each stockholder of record received a personal notice of the lawsuit. Under the circumstances of this case, plaintiffs cannot be heard to say they sold their stock without knowledge of the lawsuit or that a settlement would be effectuated.

Thus, the issue before us is whether a stockholder, who was aware of, or should have been aware of, a pending lawsuit and a possible settlement resolving it which would clearly affect said stockholder's property rights, and who then sold the stock, can now petition a court for the imposition of a constructive trust so as to reap the benefits of a settlement reached in the suit.

We believe that this issue has been clearly answered in the negative by the Pennsylvania Supreme Court in Rafferty v. Donnelly, 197 Pa. 423, 47 Atl. 202 (1900). In this case appellant, a former stockholder, brought an action against corporate officers alleging that they illegally appropriated money from the corporate treasury. Appellant contended that he was entitled to the proportionate sum of money alleged to be taken. The referee had ruled that appellant could not maintain any action against the corporate officers because he had

known about the wrongs alleged but, nevertheless, decided to sell his stock 18 months before he instituted the lawsuit.

The Pennsylvania Supreme Court upheld the decision of the referee (and sustained the lower court's ruling). The court stated, at 428-429: "If the appellant did not part with his stock in ignorance of the conduct of the appellees, of which he complains, and sold it, knowing what they had done, his bill was properly dismissed." Accord, e.g., Mitchell v. Beachy, 110 Kan. 60, 202 P. 628 (1921) (relying on Rafferty v. Donnelly, supra); Kenrich Corp. v. Miller, 377 F. 2d 312, 314 (3d Cir. 1967) (holding that a former stockholder who knew about the alleged intra-corporate wrongdoings became a "stranger" to an action against the corporation).

Furthermore, it is important to point out that the court in Rafferty v. Donnelly, supra, at 429, stated that even if appellant was not barred on the aforementioned basis, his demand for proportionate sum of the money alleged to have been taken was improper, because his only action would have been to institute proceedings to have the money returned to the corporate treasury.

Applying the principle that there is no rigid standard for determining whether the facts of a particular case justify the imposition of a constructive trust and the holding in Rafferty v. Donnelly, supra, we conclude that the circumstances of the instant case clearly do not mandate the imposition of a constructive trust. Plaintiffs had actual notice of the Papilsky v. Berndt lawsuit, and they sold their stock without regard to the outcome of the suit even though it was obvious that the disposition of the suit could conceivably affect the value of their stock. Since plaintiffs were under no compulsion to sell,

we find they should be deemed "strangers" to the Papilsky v. Berndt settlement and now cannot contend, after the fact, that their property rights should be reevaluated.

We do not agree with plaintiffs' allegation that the Fund would be unjustly enriched if their claim was denied. On the contrary, we see the Papilsky v. Berndt settlement as being a fair and equitable settlement of a very complex situation.*

We find no merit in plaintiffs' contention that prospective stockholders who only bought stock after the announcement of the settlement would be unjustly enriched. This argument is not valid because if plaintiffs felt that new stockholders might obtain the benefits of the settlement, there was nothing preventing them from either keeping their stock or again buying shares in the Fund in anticipation of also obtaining these benefits.

Furthermore, if we were to impose a constructive trust, we would be providing plaintiffs with preferential treatment over the class of stockholders who actually participated in the Papilsky v. Berndt settlement. It is important to reiterate that the advantages gained by the stockholders who participated in the Papilsky v. Berndt settlement materialized in the form of the agreement of the Fund to lower its management fees by $29,166.67 per month for a period of 120 consecutive months. Therefore, this class of stockholders was placed in the same position as stockholders who had purchased stock in the Fund after notice of the settlement and in anticipation of reaping the benefits of the settlement. We

---

*See Wolgin v. State Mutual Investors, 265 Pa. Superior Ct. 525, 402 A. 2d 669 (1979), where the Superior Court held that a settlement reached in the Federal courts will not be interfered with.

refuse to afford plaintiffs any preferential treatment over these groups of stockholders.

Lastly, if we were to impose a constructive trust, this could result in a redetermination of the rights of the parties who actually participated in the Papilsky v. Berndt settlement. We can envision a situation where the class of stockholders who actually participated in this complex litigation might not have agreed to such a settlement if plaintiffs' claims were brought before them at the proper time. Accordingly, the imposition of a constructive trust might disturb the Papilsky v. Berndt settlement, a contingency we wish to prevent.

In view of the reasons set forth above, we sustain defendant's preliminary objection in the nature of a demurrer and dismiss the complaint in equity. We did not reach the other preliminary objections which we dismiss as moot.

## ORDER

And now, December 23, 1980, defendant's preliminary objection in the nature of a demurrer is sustained and it is ordered that plaintiffs' complaint in equity be dismissed.

In light of the aforementioned order, defendant's other preliminary objections are dismissed as moot.